AO 106 (Rev. 04/10) Application for a Search Warrant

FILED          ENTERED
LODGED         RECEIVED

OCT 17 2016

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )           Case No. ▬▬▬▬  **MJ16-442**
All Google/Alphabet services associated )
with the account writer3d@gmail.com )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
All Google/Alphabet services associated with the account writer3d@gmail.com as further described in Attachment A, which is attached hereto and incorporated herein by this reference.

located in the        Western        District of        Washington        , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B which is attached hereto and incorporated herein by this reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| Title 18, U.S.C. §1591, 2422(a) | Sex Trafficking through Force, Fraud, and Coercion; Transportation for the |
| Title 18, U.S.C. §§ 2252(a)(2), | Purpose of Prostitution through Coercion and Enticement. |
| 2252(a)(4)(B) | Violations relating to child exploitation and child pornography. |

The application is based on these facts:

Please see attached Affidavit of Special Agent Ingrid Arbuthnot-Stohl, Federal Bureau of Investigation, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of        days (give exact ending date if more than 30 days:        ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ingrid Arbuthnot-Stohl, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: *17 October 2016*

_____
*Judge's signature*

City and state: Seattle, Washington

JAMES P. DONOHUE, CHIEF U.S. MAGISTRATE JUDGE
*Printed name and title*

# A F F I D A V I T

STATE OF WASHINGTON          )
                             )          ss
COUNTY OF KING               )

I, Ingrid Arbuthnot-Stohl, being first duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI), assigned to the Special Agent in Charge in Seattle, Washington.  I have been an agent with the FBI since December 2010.  As part of my daily duties as an FBI agent, I investigate criminal violations relating to child exploitation and child pornography, including violations of Title 18, United States Code §§ 2251(a), 2252A, 2422, and 2423.  I have received training in the area of child pornography and child exploitation, and have observed and reviewed numerous examples of child pornography in numerous forms of media, including media stored on digital media storage devices such as computers, iPhones, etc.  I have also participated in the execution of numerous search warrants involving investigations of child exploitation offenses.  I have participated in numerous operations targeting the trafficking of women and children for prostitution, and am versed in the methods and motivations of those who sexually exploit women and children for financial gain.  I am a member of the Seattle Internet Crimes Against Children (ICAC) Task Force in the Western District of Washington, and work with other federal, state, and local law enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children.

2.      I make this affidavit in support of an application for a search warrant for information associated with the services linked with the email account writer3d@gmail.com (the "SUBJECT ACCOUNT"), an e-mail account that is stored at premises controlled by Google, an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043.  These services include Google Calendar, Google Docs, Google Drive, Google hangouts, Google Maps Engine, Google Offers, Google Photos, Google Services,

Affidavit of Ingrid Arbuthnot-Stohl/- 1
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Google, Google Voice, Google+, Plusone, Youtube, and iGoogle (hereinafter the "SUBJECT ACCOUNT SERVICES").   The information to be searched is described in the following paragraphs and in Attachment A.

3.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

4.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Sex Trafficking through Force, Fraud, and Coercion, in violation of Title 18, United States Code, Section 1591; Transportation for the Purpose of Prostitution through Coercion and Enticement, in violation of Title 18, United States Code, Section 2422(a); Receipt or Distribution of Child Pornography, in violation of Title 18, United States Code, Section 2252(a)(2); and Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252(a)(4)(B) have been committed by DAVID DELAY.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities and contraband of these crimes further described in Attachment B.

Affidavit of Ingrid Arbuthnot-Stohl/- 2
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**THE INVESTIGATION**

6.      On December 10, 2014, an individual named M.K. came to the Redmond
Police Department (RPD) with her mother to meet with RPD Detective Natalie D'Amico.
M.K.'s mother advised that M.K. has auditory exclusion disorder and severe anxiety and had
been on an Individual Education Plan (IEP) from third grade through high school.  M.K.'s
mother described her daughter as developmentally delayed.  During the subsequent
interview, M.K. told Detective D'Amico that in early 2014, she had met MARYSA R.
COMER through a social media website called MeetMe.com.  At the time, M.K. was in high
school.  M.K. stated that COMER, who identified herself as "Reese," seduced her.  M.K.
eventually believed herself to be in love with COMER.  According to M.K., she was very
lonely at the time because her parents were divorced, her mother worked a lot, and she
wanted to feel like part of something.

7.      After several months of communicating online, COMER convinced M.K. to
meet her and her boyfriend, DAVID DELAY, in person.   COMER and DELAY picked
M.K. up from her high school.  During the course of several conversations, COMER and
DELAY asked M.K. to move in with them and told her that she would make their lives
complete if she became a part of their relationship.  Although M.K. initially declined their
offer, COMER and DELAY eventually persuaded her to change her mind.  Among other
things, COMER and DELAY told M.K. that her parents were not good people because they
were too controlling and did not treat her like an adult.  M.K. stated that she eventually
agreed to move in with DELAY and COMER and join their relationship because she had
fallen in love with COMER.

8.      M.K. said that COMER was 19 years old and DELAY was 48 years old.  M.K.
said that she was surprised when she first met DELAY and learned that he was so much
older than her and COMER.

9.      In June 2014, M.K. moved into COMER and DELAY'S residence in
Lynnwood, Washington.  After M.K. moved into the residence, COMER and DELAY told
her that they were filming a documentary about human trafficking and escorting.   COMER

Affidavit of Ingrid Arbuthnot-Stohl/- 3
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  and DELAY asked M.K. to participate in the documentary by working as a prostitute/escort

2  so that she would know firsthand what the prostitution industry is like.  They told her that

3  she would be required to give them a portion of the money she earned from prostituting and

4  that in exchange for her participation, they would give her $20 million at the end of the

5  production.  DELAY and COMER also told M.K. that it would be legal for her to work for

6  them as a prostitute because it was for a documentary.  M.K. agreed to participate in the

7  documentary, and to work for DELAY and COMER as a prostitute, because she believed she

8  would receive millions of dollars for doing so.  DELAY and COMER gave M.K. a contract

9  to sign which stated that M.K. would agree to work for the documentary and to pay

10 "production fees" every week to fund the documentary.  In exchange, M.K. would receive

11 $20 million after the documentary was sold.

12        10.      M.K. said that at DELAY and COMER's urging, she had sex with strangers for

13 money on numerous occasions.  M.K. said DELAY and COMER initially told her that she

14 would only have to work as a prostitute until they raised enough money to film the

15 documentary.   However, they continually told her that they needed more money to fund the

16 documentary and that she needed to prostitute to fulfill her contractual obligations.

17 According to M.K., prostitution dates for her were typically arranged online.  M.K. stated

18 that COMER would use her iPhone and MacBook to post advertisements featuring M.K. on

19 various escort websites, using provocative pictures that COMER had taken of M.K.

20 COMER also responded to all inquiries from customers who responded to the online

21 advertisements and negotiated the terms of the commercial sex act.  COMER conducted

22 these communications through an application on her iPhone.  M.K. said that DELAY and

23 COMER decided what prices M.K. should charge for commercial sex.  According to M.K.,

24 the prices were $220 for one hour, $180 for half an hour, and $120 for fifteen minutes.

25        11.      M.K. said that she gave all of her prostitution earnings to DELAY.  On some

26 occasions, she handed cash to COMER, but whenever she did so, COMER would give the

27 money to DELAY.  M.K. does not know what DELAY did with the money she earned from

28 prostitution.

Affidavit of Ingrid Arbuthnot-Stohl/- 4
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     M.K. stated that DELAY and COMER took her to numerous other cities and states to work as a prostitute.  M.K. stated that at DELAY and COMER's instruction, she engaged in commercial sex acts in Bellingham, Washington; Lynnwood, Washington; Beaverton, Oregon; Portland, Oregon; Las Vegas, Nevada; Houston, Texas; Chicago, Illinois; and in Miami, Tampa, and Fort Lauderdale, Florida.  According to M.K., DELAY drove her to local destinations such as Bellingham and Oregon.  Otherwise, M.K. would fly (usually with DELAY and COMER) to the destination.  DELAY always made the flight arrangements and paid for the tickets, hotels and rental cars.  M.K. stated that DELAY usually made the flight arrangements using either his iPad or MacBook laptop.  On some occasions, M.K. traveled by herself to another city to work as a prostitute.  Even when M.K. traveled by herself, COMER still placed the online advertisements and arranged the terms of the dates with sex purchasers, while DELAY took care of and paid for all travel arrangements.  Whenever M.K. traveled by herself to work as a prostitute, she gave all the money she earned to DELAY as soon as she arrived home.

13.     M.K. stated that during the time she lived with DELAY and COMER, they exercised complete control over her.  Among other things, DELAY and COMER provided her with a new cell phone, as well as a computer to access her e-mail and Facebook accounts.  However, DELAY and COMER also had access to her e-mail and Facebook accounts through the cell phone and computer they let her use.  DELAY and COMER also monitored who she talked to on the phone.

14.     M.K. stated that DELAY and COMER had recruited several other women to work as prostitutes to fund their "documentary" and that she (M.K.) had met some of them.  She recalled some of their names and provided them to Detective D'Amico.  They included T.G., J.S., and S.W.  M.K. thought their ages ranged from 18 to 24, but said that she had heard DELAY talk about his interest in recruiting juvenile girls to work as prostitutes for him.

15.     On November 5, 2014, M.K. was alone at DELAY and COMER's residence.  She used a phone that she had bought two days earlier without DELAY and COMER's

Affidavit of Ingrid Arbuthnot-Stohl/- 5
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    knowledge to call her mother and ask her to pick her up.  Because M.K.'s mother was in

2    California at the time, a friend of M.K.'s mother picked M.K. up from DELAY and

3    COMER's residence.  M.K. then flew to California to reunite with her mother.

4         16.     After learning that M.K. had left, both COMER and DELAY made numerous

5    attempts to reach her.  COMER made many calls to M.K. and sent numerous text messages

6    to her pressuring her to come back to their house.  DELAY also tried to get in touch with

7    M.K., telling her that he needed her address so that he could send a check to her.  DELAY

8    also offered to pay for M.K.'s college if she returned to his house.  M.K. did not respond to

9    any of the messages or phone calls and subsequently had her phone number changed.  On

10   November 12, 2014, M.K. received a Facebook message from COMER telling her that if she

11   didn't respond by 8:00 p.m. that evening, pictures of M.K. would be posted on her Facebook

12   page.  That evening, after M.K. did not respond, provocative pictures, including pictures of

13   M.K. in her underwear, were posted on M.K.'s Facebook page.  M.K.'s Facebook page was

14   also updated to include the following status updates: "I'm back bitchez," "Don't judge me"

15   and "I'm starting my own business in the adult industry.  If you know any adult film

16   directors or clients (if you know what I mean) to send my way let me know!"  When M.K.

17   tried to access her Facebook account to remove the pictures and postings, she learned that

18   her password had been changed and she could no longer access the account.  As noted above,

19   COMER previously had access to M.K.'s Facebook and e-mail accounts.   Pursuant to a law

20   enforcement request, Facebook subsequently disabled M.K.'s Facebook accounts.

21        17.     After talking with M.K., Detective D'Amico attempted to search for the

22   provocative images that had been posted on M.K.'s Facebook page through a Google Image

23   search.  Detective D'Amico discovered numerous prostitution advertisements online with

24   M.K.'s picture on it.  Prostitution advertisements for M.K. were posted on at least sixteen

25   different escort related websites, including TNA Board, Backpage, Skip the Games, Escort

26   Profile, Adult Hookups, Erotic Mug Shots, Independent Girls, Body Rub List, Escorts

27   Forever, Escorts.Zisile, EscortsJiJi, Executive Companion, Escorts Meet, Friend4Rent,

28   EscortsClick2Call, and Escorts Xport.  M.K. stated that all of these advertisements had been

Affidavit of Ingrid Arbuthnot-Stohl/- 6
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  posted by COMER, using her iPhone or MacBook. Some of the escort advertisements
2  involving M.K. were posted in cities such as Chicago, Everett, Tampa, Las Vegas, and
3  Beaverton.

4       18.    Detective D'Amico also located and reviewed a King County Sheriff's Office
5  report dated April 3, 2014. The report listed both COMER and DELAY as involved parties
6  in a prostitution case. In this case, T.G., who had previously been identified by M.K. as
7  another female who was working for DELAY and COMER as a prostitute, was arrested for
8  prostitution in SeaTac, Washington. T.G. told the officers who arrested and interviewed her
9  that what she was doing was legal as it was for a documentary being produced by DELAY
10 and that he owned a business called Grandpa's R.V. Productions. T.G. provided a phone
11 number for DELAY, which was the same one provided by M.K. T.G. advised that she had
12 met DELAY online while she was living in Pittsburgh and that he had paid for to fly her to
13 Seattle. After arriving in Seattle, DELAY took T.G. to his apartment and asked her to sign a
14 contract that said she had to work for 365 days a year and pay him $1,800.00 a week from
15 her prostitution earnings. According to T.G., she was going to receive $20 million after she
16 completed what was asked of her in the contract.

17      19.    Redmond Police Department also served a search warrant to Google to recover
18 M.K.'s e-mails during the time she had stayed with DELAY and COMER. M.K.'s account
19 included numerous e-mails between her and the e-mail account writer3d@aol.com, which
20 M.K. said belonged to DELAY. One e-mail sent to M.K. from the writer3d@aol.com
21 account on September 4, 2014 stated: "Lol baby I found your charger would you stay and
22 work another day for me baby?? Do you love me enough to do that." Another message from
23 the writer3d@aol.com account to M.K. stated: "I need you to save us and the doc so we can
24 get [FV (another female victim)]. I can get another ticket I really need you baby." Another
25 e-mail sent to M.K. from the writer3d@aol.com account dated September 9, 2014 stated:
26 "Logan *82 702-553-4603 Call this girl and tell her you are here in town doing porn and
27 looking for a duo partner and then see if you can slowly convince her to do the doc :)."
28 Based upon this review of the e-mails sent from the writer3d@aol.com account to M.K.'s

Affidavit of Ingrid Arbuthnot-Stohl/- 7
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   account, Detective D'Amico concluded that DELAY was using the writer3d@aol.com

2   account to coerce and entice M.K. to work as a prostitute and to travel across state lines for

3   the purpose of prostitution.

4          20.      Detective D'Amico also interviewed a woman named H.N.  H.N. stated that

5   she had met DELAY on the social media website tagged.com in 2012, when she was sixteen

6   years old and DELAY was in his mid-40s.  H.N. said that she and DELAY began an online

7   sexual relationship.   They also met in person and had sex on two occasions.  On both

8   occasions, H.N. was under the age of 18.   According to H.N., she and DELAY primarily

9   communicated via text message and e-mail.  She said that DELAY used the e-mail account

10  writer3d@aol.com to communicate with her.  DELAY used the writer3d@aol.com e-mail

11  account to ask her to e-mail nude photographs and sexually explicit videos to him.  She

12  stated that when she was 16 and 17, she sent nude photographs and explicit videos to

13  DELAY at the writer3d@aol.com account.  DELAY also used the writer3d@aol.com

14  account to attempt to pressure H.N. to work for him as a prostitute and a porn star.  H.N. has

15  provided law enforcement with copies of some of the e-mail correspondence between her

16  and DELAY's writer3d@aol.com account, and they included written requests by DELAY

17  for H.N. to send photographs, videos, and to work as "a whore or porn star."

18         21.      Redmond Police Department also served a search warrant to AOL to receive e-

19  mail history from happy_hollieday@aol.com, an e-mail address that M.K. stated belonged to

20  COMER.  Detective D'Amico was familiar with this e-mail address, as it was associated

21  with the majority of the prostitution advertisements featuring M.K., particularly those posted

22  on TNA Board.  In addition, the happy_hollieday@aol.com account included the name

23  "Reese Comer" and the phone number 206-259-5503 at the bottom of several outgoing e-

24  mails.  There were multiple e-mails between happy_hollieday@aol.com and

25  writer3d@aol.com.  The e-mail account happy_holliday@aol.com provided a contact name

26  for the e-mail account writer3d@aol.com as "David."

27         22.      On August 26, 2015, I applied for and received a warrant to search the contents

28  of the writer3d@aol.com account.  My review of the documents, photographs, videos, and

1  email communications on the writer3d@aol.com account indicated that this email account

2  was used to entice victims to participate in prostitution by participating in DELAY's so-

3  called "documentary" on prostitution, as well as to entice juveniles to send nude and sexually

4  explicit photographs and videos to DELAY over email.

5      23.     During the course of my review of the writer3d@aol.com account, I learned

6  that DELAY also used the e-mail account writer3d@gmail.com (the SUBJECT

7  ACCOUNT).  Specifically, in an examination of the contents of writer3d@aol.com, I

8  discovered communications between that account and the SUBJECT ACCOUNT.  Based

9  upon my review of these communications, I concluded that the SUBJECT ACCOUNT was

10 utilized to transfer files between the two accounts.  I also found at least two emails sent from

11 the SUBJECT ACCOUNT to the writer3d@aol.com account that included sexually explicit

12 images of a known female, H.H., who was a juvenile at the time the photos were taken.  The

13 images are part of a series of photos that contains both child erotica and child pornography of

14 the identified juvenile.  Numerous other files that included child pornography of other known

15 juveniles were discovered on the writer3d@aol.com account.  The SUBJECT ACCOUNT

16 also sent to writer3d@aol.com images and videos of unknown females engaged in sexual

17 explicit acts, video of DELAY filming himself talking to the camera, and miscellaneous

18 other photos and videos.

19     24.     I have also reviewed recorded telephone calls made by DELAY to various

20 family members during the time he has been detained in the Federal Detention Center in

21 SeaTac, Washington.  During several of these conversations, DELAY told his mother and

22 daughter about an unknown email account that he said law enforcement does not know

23 about.  During some of these calls, DELAY has told his family members that he has further

24 evidence related to the charges against him that he has not turned over to his attorneys or to

25 the government.  In one such conversation that took place on January 31, 2016, DELAY told

26 his daughter he remembered the email address where "everything is," but did not want to

27 provide the account to his lawyers.  Instead, DELAY told his daughter that he wanted to

28 release everything directly to the media.  Based upon these statements, and my knowledge

Affidavit of Ingrid Arbuthnot-Stohl/- 9
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   that various images of child pornography featuring juvenile victim H.H. were transferred

2   between the writer3d@aol.com account and the SUBJECT ACCOUNT, I believe that the

3   SUBJECT ACCOUNT is likely the email account to which DELAY is referring on the

4   recorded calls.

5       25.    On August 2, 2016, I obtained a search warrant in the Western District of

6   Washington for the contents of the SUBJECT ACCOUNT.  The results of this search

7   warrant were received on August 24, 2016.  In a review of the contents of the SUBJECT

8   ACCOUNT, I found several photos of H.H., an identified minor at the time the photos were

9   taken, that were sent from the SUBJECT ACCOUNT to writer3d@aol.com.  Most of the

10  photos were consistent with child pornography.  The pictures appeared to be self-taken in a

11  bathroom, and showed H.H. naked in sexually explicit poses.  At least one of these sexually

12  explicit photos was sent from the SUBJECT ACCOUNT to a third party email,

13  sherijean33@gmail.com.  In addition to images of H.H., I also found a video of H.N., an

14  identified minor at the time of the video.  In the video, H.N. is naked along with an

15  unidentified male, possibly a minor, who is also naked.  H.N. alternates between manually

16  masturbating the unidentified male and performing oral sex on him.  This video was sent

17  from the SUBJECT ACCOUNT to writer3d@aol.com.

18      26.    The search warrant results from the SUBJECT ACCOUNT also included email

19  communications between DELAY and various women where he discusses his work filming a

20  "documentary."  One such email exchange was between the SUBJECT ACCOUNT and the

21  email account kylie.berlin420@gmail.com.  In the email exchange, DELAY told the

22  recipient, "call me then if you want to see the HBO deposit right now."  Later, in the email

23  exchange, David told the recipient, "So we understand each other there now is 3 million

24  dollars in Chase for them to have the right to bid on the documentary I am not gonna wait

25  around for you and the games you call me today if you don't I will know you want out no

26  more excuses I won't lose that money so call me."

27      27.    The response provided by Google to the warrant for the SUBJECT ACCOUNT

28  indicated that DELAY had signed up for numerous services offered by Google to include

Affidavit of Ingrid Arbuthnot-Stohl/- 10
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Google Calendar, Google Docs, Google Drive, Google hangouts, Google Maps Engine,

2   Google Offers, Google Photos, Google Services, Google, Google Voice, Google+, Plusone,

3   Youtube, and iGoogle.  The response further advised me Google would only provide the

4   information contained within these services pursuant to a search warrant that specifically

5   identified those services.

6          28.     As set forth below, I am aware, based upon my training and experience, that

7   those who collect and trade child pornography often maintain their collection in a variety of

8   formats and media storage devices.  Services like Google Docs, Google Drive, Google

9   Photos, Google+, YouTube, etc., are viable places for images to be stored.  In addition, it is

10  clear through a review of the email exchanges in the SUBJECT ACCOUNT and that of

11  writer3d@aol.com, that DELAY has had ongoing email, phone, text, and other social media

12  contact with identified minors from which he has obtained child pornography.  The services

13  offered by Google can show the dates, times, geolocation, and content of these

14  communications, as well as provide search history that may show how he met his victims,

15  his methodology for pursuing victims, and where he targeted his victims.  In addition, the

16  services Google offers can help establish DELAY's location when he was known to have

17  engaged in sex trafficking.  Those facilitating sex trafficking often keep calendars of the

18  "dates" the females they're running have.  A service like Google Calendar could be a

19  repository for information relating to the facilitation of prostitution.  DELAY is known to

20  have drafted contracts with various victims for the documentary which could be stored as

21  documents in Google Docs, or as images in services like Google Drive, Google Photo, etc.

22  Google Services are design to be easily integrated with each other, making it simple to

23  transfer files between services and accounts.  As such, DELAY could have stored

24  information, documents, photos, videos, and other files related to the crimes of child

25  pornography and/or sex trafficking in one Google service and easily transferred them to any

26  other services.   It is therefore likely that SUBJECT ACCOUNT's services, specifically

27  Google Calendar, Google Docs, Google Drive, Google hangouts, Google Maps Engine,

28

Affidavit of Ingrid Arbuthnot-Stohl/- 11
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Google Offers, Google Photos, Google Services, Google, Google Voice, Google+, Plusone,

2   Youtube, and iGoogle, also contain evidence of the crimes stated in this document.

3   ## BACKGROUND REGARDING SERVICES OF GOOGLE

4       29.    As a result of my training and experience, I have learned that Google provides

5   a variety of on-line services, including electronic mail ("e-mail") access, to the general

6   public. Google allows subscribers to obtain e-mail accounts at the domain name gmail.com,

7   like the writer3d@gmail.com e-mail account listed in Attachment A.

8       30.    Subscribers obtain an account by registering with Google. When doing so, e-

9   mail providers like Google ask the subscriber to provide certain personal identifying

10  information. This information can include the subscriber's full name, physical address,

11  telephone numbers and other identifiers, alternative e-mail addresses, and, for paying

12  subscribers, means and source of payment (including any credit or bank account number). In

13  my training and experience, such information may constitute evidence of the crimes under

14  investigation because the information can be used to identify the account's user or users, and

15  to help establish who has dominion and control over the account.

16      31.    E-mail providers typically retain certain transactional information about the

17  creation and use of each account on their systems. This information can include the date on

18  which the account was created, the length of service, records of log-in (i.e., session) times

19  and durations, the types of service utilized, the status of the account (including whether the

20  account is inactive or closed), the methods used to connect to the account (such as logging

21  into the account via Google's Gmail website), and other log files that reflect usage of the

22  account. In addition, e-mail providers often have records of the Internet Protocol address

23  ("IP address") used to register the account and the IP addresses associated with particular

24  logins to the account. Because every device that connects to the Internet must use an IP

25  address, IP address information can help to identify which computers or other devices were

26  used to access the e-mail account, which can help establish the individual or individuals who

27  had dominion and control over the account.

28

Affidavit of Ingrid Arbuthnot-Stohl/- 12
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     In general, an e-mail that is sent to a Google subscriber is stored in the subscriber's "inbox" on Google's Gmail servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google's servers for a certain period of time.

33.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to the internet provider's servers, and then transmitted to its end destination. Google often maintains a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google server, the e-mail can remain on the system indefinitely. Even if the sender deletes the e-mail, it may continue to be available on Google's servers for a certain period of time.

34.     A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Google, but may not include all of these categories of data.

35.     A Google subscriber can also store files, including e-mails, address books, contact or buddy lists, instant messages, calendar data, photographs, and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, instant messages, calendar data, e-mail in the account, attachments to e-mails, including photographs and files, and photographs and files stored in relation to the account. In this case, victim H.N. has advised law enforcement that at DELAY's request, she e-mailed numerous sexually explicit photographs and videos of herself to DELAY at his writer3d@aol.com e-mail address. I am aware from my review of the writer3d@aol.com account that this account was utilized to transfer files between it and the SUBJECT ACCOUNT. Some of these files included images of a known female who was a juvenile at the time the photos were taken. Accordingly, there is a strong likelihood that the SUBJECT

Affidavit of Ingrid Arbuthnot-Stohl/- 13
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 ACCOUNT SERVICES may contain photographs and videos, which would constitute
2 evidence of the crimes of child pornography and attempted sex trafficking of a juvenile.

3      36.     A subscriber to a Google Gmail account can also store files, including address
4 books, contact lists, calendar data, photographs and other files, on servers maintained and/or
5 owned by Google. For example, Google offers users a calendar service that users may
6 utilize to organize their schedule and share events with others. Google also offers users a
7 service called Google Drive that may be used to store data and documents. The Google
8 Drive service may be used to store documents including spreadsheets, written documents
9 (such as Word or Word Perfect) and other documents that could be used to manage a
10 website. Google Drive allows users to share their documents with others or the public
11 depending on the settings selected by the account holder. Google also provides its users with
12 access to the photo storage service "Picasa." Picasa can be used to create photo albums,
13 store photographs, and share photographs with others. Another Google service called "You
14 Tube" allows users to view, store and share videos. Google also provides a service called
15 "Google Analytics". Google Analytics is a Google service that monitors website traffic and
16 provides subscribers with data relating to how much traffic is visiting the subscriber's
17 website, which sections of the subscriber's website users are visiting, how long users are
18 staying on particular sections of the site, and the geographical source of users visiting the
19 website, among other things. Based upon my experience and that of other law enforcement
20 officers, it is common for those engaged in child pornography, and/or sex trafficking to store
21 images, videos, and other files to multiple devices and accounts. Those engaged in such
22 illegal activities have been known to store illicit images/video/files on accounts like Google
23 Photos, that stores images cloud servers, rather than on the physical hard drive of the subject.
24 This allows the subject to access the store of illicit images easily from other devices, and to
25 share them with others who would engage in such illegal activity. Often, services will
26 include the option to automatically upload images and other files to the cloud storage. If this
27 option is selected, a digital backup would occur on the account holder's cloud storage.
28 Given the ease of transfer between Google services, it is likely that evidence of child

Affidavit of Ingrid Arbuthnot-Stohl/- 14
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  pornography and/or sex trafficking is likely to be found in the SUBJECT ACCOUNT

2  SERVICES.

3  <u>**PAST EFFORTS TO OBTAIN THIS EVIDENCE**</u>

4      37.    This evidence has not been previously available to me or other agents.  On

5  May 11, 2016, I sent a preservation letter to Google, requesting that they preserve all

6  evidence related to the SUBJECT ACCOUNT, writer3d@gmail.com, under authority of

7  Title 18, United States Code, Section 2703(f)(1), for a period of 90 days.  Google provided

8  the reference number of 9-5743000011602.  On August 2, 2016, I obtained a search warrant

9  in the Western District of Washington for the contents of the SUBJECT ACCOUNT.  The

10  results to this search were received on August 24, 2016.  The results indicated that DELAY

11  had signed up for numerous Google services to include Google Calendar, Google Docs,

12  Google Drive, Google hangouts, Google Maps Engine, Google Offers, Google Photos,

13  Google Services, Google, Google Voice, Google+, Plusone, Youtube, and iGoogle.  On

14  August 15, 2016, I sent a preservation letter to Google, requesting they preserve all evidence

15  related to the above services associated with the SUBJECT ACCOUNT SERVICES, under

16  authority of Title 18, United States Code, Section 2703(f)(1), for a period of 90 days.

17  Google acknowledged receipt of the preservation letter via reference number 7-

18  1286000013239.

19  <u>**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**</u>

20      38.    Pursuant to Title 18, United States Code, Section 2703(g), this application and

21  affidavit for a search warrant seeks authorization to permit Google and their agents and

22  employees, to assist agents in the execution of this warrant.  Once issued, the search warrant

23  will be presented to Google, with direction that the companies should identify the Google

24  account described in Attachment A to this affidavit, as well as other subscriber and log

25  records associated with the accounts, as set forth in Section I of Attachment B to this

26  affidavit.

27      39.    The search warrant will direct Google to create an exact copy of the specified

28  account and records.

Affidavit of Ingrid Arbuthnot-Stohl/- 15
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

40.     I, and/or other law enforcement personnel will thereafter review the copy of the electronically stored data, and identify from among that content those items that come within the items identified in Section II to Attachment B, for seizure.

41.     Analyzing the data contained in the forensic image may require special technical skills, equipment, and software. It could also be very time-consuming. Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keywords used originally need to be modified continuously, based on interim results. Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common e-mail, database and spreadsheet applications do not store data as searchable text. The data may be saved, instead, in proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well. Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

Affidavit of Ingrid Arbuthnot-Stohl/- 16
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

42.     Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).] Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Accordingly, by this Affidavit and Warrant I seek authority for the government to search all of the items specified in Section I, Attachment B (attached hereto and incorporated by reference herein) to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to that same Attachment.

Dated this __17__ day of October, 2016.

Ingrid Arbuthnot-Stohl
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me this ___17th___ day of October, 2016.

JAMES P. DONOHUE
Chief United States Magistrate Judge

Affidavit of Ingrid Arbuthnot-Stohl/- 17
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A**

**Accounts to be Searched**

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with the services of Google account writer3d@gmail.com, to include Google Calendar, Google Docs, Google Drive, Google hangouts, Google Maps Engine, Google Offers, Google Photos, Google Services, Google, Google Voice, Google+, Plusone, Youtube, and iGoogle, as well as all other subscriber and log records associated with the above specified services, which are located at premises owned, maintained, controlled or operated by Google, an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043.  Google provided the reference number 7-1286000013239 for the preservation request sent on August 25, 2016.

Affidavit of Ingrid Arbuthnot-Stohl/- 18
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B

**I.    Section I – Information to be disclosed by Google for search:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, including any records, files, logs, or information that has been deleted but is still available to Google.   Google is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

b.    The types of service utilized;

c.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, instant messages, and instant messenger contact information, calendar data, pictures, and files.

d.    All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken.

e.    All records, content, or other information stored at any time by an individual using the account services of Google Calendar, Google Docs, Google Drive, Google hangouts, Google Maps Engine, Google Offers, Google Photos, Google Services, Google, Google Voice, Google+, Plusone, Youtube, and iGoogle, including private messages, emails, contact and buddy lists, instant messages, instant messenger contact information, pictures, video, files, comments, address books, book marked content, and other files.

**II.    Section II – Information to be seized by the government**

All information described above in Section I that constitutes contraband, evidence and instrumentalities of the following crimes: Sex Trafficking through Force, Fraud, and

Affidavit of Ingrid Arbuthnot-Stohl/- 19
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Coercion, in violation of Title 18, United States Code, Section 1591; Transportation for the

2    Purpose of Prostitution through Coercion and Enticement, in violation of Title 18, United

3    States Code, Section 2422(a); Receipt or Distribution of Child Pornography, in violation of

4    Title 18, United States Code, Section 2252(a)(2); and Possession of Child Pornography, in

5    violation of Title 18, United States Code, Section 2252(a)(4)(B) including, for each account

6    or identifier listed on Attachment A, information pertaining to the following matters:

7              a.        Communications, including but not limited to e-mail and instant
     message communications, with individuals regarding prostitution, child pornography,
8    websites offering escort services and the music and film industry, including but not limited
9    to the following:

10                       i.        Communications with prostitutes, prostitution customers, or
11   fellow members of a sex trafficking conspiracy;

12                       ii.       Communications regarding prostitution, sex trafficking,
     pornography, or the adult film industry;
13

14                       iii.      Communications with or regarding social networking sites
     Meetme.com, Carrotdating.com, tagged.com, sugardaddyforme.com, Facebook.com,
15   Sexjobs.com, or Backpage.com, or communications with the users of such social networking
16   sites;

17                       iv.       Communications regarding the music or film industry, or the
18   making of films or documentaries; and

19                       v.        Communications with potential victims of sex trafficking or
     prostitution crimes.
20

21             b.        Photographs used to post on the internet for advertising escort services;
     of criminal associates and women working with or for DAVID DELAY or MARYSA
22   COMER; of the potential proceeds of prostitution activity, including but not limited to large
23   sums of cash, clothing, jewelry, electronics, and vehicles; of sites or locations where DAVID
     DELAY or MARYSA COMER and their associates or sex workers may have engaged in
24   prostitution activities; and constituting potential child pornography.

25

26

27

28

Affidavit of Ingrid Arbuthnot-Stohl/- 20
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    c.    Contact lists and address books which may include names, telephone
2  numbers, addresses, and e-mail addresses of associates, customers, potential recruits or
   victims, and/or sex workers involved in prostitution, sex trafficking, and the adult film
3  industry; SMS or pager addresses, including E-mail correspondences, saved web links,
4  content and connection log files, including dates, times, methods of connecting;

5    d.    Internet chat files involving prostitution, sex trafficking; escorting,
6  pornography, the adult film industry, or an alleged documentary relating to escorting and/or
7  prostitution or the music industry;

8    e.    Documents showing communication with internet posting services used
9  to post escort services; which may contain evidence of prostitution activity; which may
   contain customer lists, money owed or received from the illegal activity of prostitution;
10 which may contain evidence relating to an alleged documentary relating to escorting and/or
11 prostitution or the music industry; personal identification information;

12
13   f.    Any videos or other multimedia files relating to prostitution, sex
   trafficking, interstate travel, production of a documentary, or obstruction of justice;
14

15   g.    Any calendar data, including but not limited to appointments, notes,
16 contact information, directions, coordinates, travel information, bank account numbers;

17   h.    Any data identifying geographic locations based on the tracking and
18 mapping by a GPS device;

19
20   i.    All messages, documents, and profile information, attachments, or other
   data that serves to identify any persons who use or access the account specified, or who
21 exercise in any way any dominion or control over the specified account;

22
23   j.    Any address lists or buddy/contact lists associated with the specified
   account;
24

25

26

27

28

Affidavit of Ingrid Arbuthnot-Stohl/- 21
USAO# 2015R00171

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         k.     All subscriber records associated with the specified account, including

2 name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized,

3 telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service)

4 including any credit card or bank account number;

5

6         l.     Any and all other log records, including IP address captures, associated with the specified account; and

7

8         m.     Any records of communications between Google and any person about

9 issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This to include records of contacts between the

10 subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS
PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct.  I am employed by _____ and my official title is _____.  I am a custodian of records for _____ I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of _____ and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.     such records were kept in the ordinary course of a regularly conducted business activity of _____ and

c.     such records were made by _____ as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.


Date                          Signature

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970